## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| BRYAN ANDERSON, | ) |
| Plaintiff, | ) Case No._____ |
| | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE FEDERAL SECURITIES LAWS** |
| SENECA BIOPHARMA, INC., KENNETH | ) |
| C. CARTER, CRISTINA CSIMMA, | ) JURY TRIAL DEMANDED |
| MARY ANN GRAY, DAVID J. MAZZO, | ) |
| and BINXIAN WEI, | ) |
| Defendants. | ) |
| | ) |

Plaintiff Bryan Anderson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This action is brought by Plaintiff against Seneca Biopharma, Inc. ("Seneca" or the "Company") and the members of Seneca's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Seneca will merge with Leading BioSciences, Inc. ("LBS") through Seneca's wholly owned subsidiary Townsgate Merger Sub 1, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On December 17, 2020, Seneca and LBS issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 16, 2020 (the

"Merger Agreement").  Under the terms of the Merger Agreement, LBS shareholders will receive 0.1539 shares of Seneca common stock for each LBS share they own (the "Merger Consideration").  Upon closing of the merger, LBS stockholders are expected to own approximately 73.8% of the combined company's stock, while Seneca stockholders are expected to own approximately 26.2%.

3.     On February 11, 2021, Seneca filed a Form 424B3 Prospectus ("Prospectus") with the SEC.  The Prospectus, which recommends that Seneca stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the Proposed Transaction; (ii) the Company's and LBS' financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the transaction committee of the Board's ("Transaction Committee") financial advisor, Cassel Salpeter & Co., LLC ("Cassel Salpeter"); and (iii) the potential conflicts of interest faced by the Company's financial advisors, Hibiscus Bioventures ("Hibiscus") and Solebury Capital LLC ("Solebury").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Seneca stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.     In short, unless remedied, Seneca's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Seneca.

9.     Defendant Seneca is a Delaware corporation with its principal executive offices located at 20271 Goldenrod Lane, Germantown, Maryland 20876.  Seneca is a clinical-stage biopharmaceutical company developing novel treatments for diseases of high unmet medical need. Seneca's shares trade on the Nasdaq Global Select Market under the ticker symbol "SNCA."

10.     Defendant Kenneth C. Carter ("Carter") has been Executive Chairman of the Company and a director since January 2019.

11.     Defendant Cristina Csimma ("Csimma") has been a director of the Company since September 2017.

12.     Defendant Mary Ann Gray ("Gray") has been a director of the Company since July 2019.

13.     Defendant David J. Mazzo ("Mazzo") has been a director of the Company since June 2019.

14.     Defendant Binxian Wei ("Wei") has been a director of the Company since February 2019.

15.     Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

16.     LBS is developing novel therapeutics designed to improve human health through therapeutic protection of the gastrointestinal mucosal barrier.  LBS' initial focus is combatting the interruption of GI function (ileus) following major surgery in order to reduce recovery times and shorten the duration of patient hospital stays.  Additionally, LBS believes that its investigational therapies have the potential to prevent the formation of postoperative adhesions (reducing hospital re-admissions and additional surgeries), as well as to address the myriad health conditions and complications associated with chronic disruption of the gastrointestinal mucosal barrier.

17.     Merger Sub is a Delaware corporation and wholly-owned subsidiary of Seneca.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

18.     Historically, Seneca has been primarily focused on the research and development of nervous system therapies based on its proprietary human neural stem cells ("NSI-566") and small molecule compounds ("NSI-189") with the ultimate goal of gaining U.S. Food and Drug Administration ("FDA") approval to market and commercialize such therapies.  In early 2019,

Seneca commenced a strategic assessment of its clinical programs to determine how to maximize shareholder value.  As a result, Seneca subsequently initiated an:

- in-licensing and acquisition strategy in which it is evaluating novel therapeutics that could benefit from Company development experience with the goal of developing such technologies for commercialization; and

- out-licensing strategy to find partners to acquire or license NSI-566 and NSI-189.

19.     In early 2019, Seneca engaged Hibiscus and initiated an in-licensing and/or acquisition strategy to expand its product pipeline.  Seneca's in-licensing strategy consists of evaluating novel therapeutics that could be synergistic to it with the goal of developing such candidates for commercialization.  In December 2019, Seneca further expanded this initiative and engaged Solebury to help explore Seneca's available strategic alternatives, including possible mergers and business combinations, a sale of part or all of Seneca's assets, and collaboration and licensing arrangements.

**The Proposed Transaction**

20.     On December 17, 2020, Seneca and LBS issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> GERMANTOWN, Md. and CARLSBAD, Calif., Dec. 17, 2020 -- Seneca Biopharma, Inc. (Nasdaq: SNCA) ("Seneca"), and Leading BioSciences, Inc. ("LBS"), a privately held company focused on developing novel therapeutics to improve human health through therapeutic protection of the gastrointestinal ("GI") mucosal barrier, announced today that they have entered into a definitive agreement under which a wholly owned subsidiary of Seneca will merge with LBS in an all-stock transaction.  The combined company will focus on advancing LBS's lead pipeline asset, LB1148, in clinical studies to evaluate its potential to improve restoration of normal GI function following major surgery and reduce certain postoperative complications such as abdominal adhesions.  Upon completion of the merger, the company is expected to operate under the name Palisade Bio, Inc. and trade on the Nasdaq Capital Market under the ticker symbol PALI.

Altium Capital has agreed to invest $22.5 million at the close of the merger, subject to customary conditions. The private placement financing will help fund continued development of the combined company's clinical programs, including LB1148, and is expected to close immediately prior to the completion of the merger.

LB1148 is a Phase 3-ready, patent-protected, oral formulation of a broad-spectrum serine protease inhibitor designed to neutralize the activity of potent digestive proteases that are released from the gut during surgery, which in turn contribute to the temporary loss of normal gastrointestinal function and formation of postoperative adhesions. By inhibiting the activity of these digestive proteases, LB1148 has the potential to prevent damage to GI tissues, accelerate the time to return of normal GI function, and shorten the duration of costly post-surgery hospital stays.

"This is a transformational event for Leading BioSciences, and a critical next step in the evolution of the Company. Through this merger, the newly formed Palisade Bio will be optimally positioned to advance our lead drug candidate LB1148 through the final phases of clinical development for FDA approval," said Tom M. Hallam, Ph.D., chief executive officer of LBS. "We are excited to commence pivotal studies with LB1148 in our first indication to reduce the time to return to normal postoperative GI function following neonatal open-heart surgery. This oral therapeutic has the potential to be transformative for improving outcomes in multiple surgery indications."

Kenneth C. Carter, Ph.D., executive chairman of Seneca, remarked, "Following an extensive review of strategic alternatives, we believe that this merger with Leading BioSciences is in the best interest of Seneca's stockholders, and has the potential to deliver both near- and long-term value to the stockholders. The strength and dedication of the Leading BioSciences leadership team, combined with their highly differentiated pipeline assets and enthusiastic support from leading clinicians, provides a compelling foundation for future success for all stakeholders, and they have our full support."

**About the Proposed Transaction**

The merger is structured as a stock-for-stock transaction whereby all of LBS's outstanding shares of capital stock and securities exercisable for LBS's common stock will be exchanged for Seneca common stock and securities exercisable for Seneca common stock. On a pro forma basis and based upon the number of shares of Seneca common stock to be issued or issuable in the merger, it is anticipated that Seneca equity holders immediately following the merger will own approximately 26.2% of the combined company and LBS equity holders (inclusive of investors in the financing) immediately following the merger will own approximately 73.8% of the combined company on a fully diluted basis using an adjusted treasury stock method.

Shareholders of Seneca will also receive one contingent value right ("CVR") for each share of Seneca common stock (including any warrants exercisable for shares of Seneca common stock) as a dividend. This will entitle the holder to receive, in certain circumstances, a certain percentage the net proceeds, if any, derived from the sale or license of the intellectual property of Seneca. Full details of the CVR agreement will be contained in Seneca's S-4 to be filed with the SEC.

Final share exchange allocations will be subject to adjustment based on Seneca's net cash balance at the time of closing. The transaction has been approved by the board of directors of both companies. The merger is expected to close in the first half of 2021 subject to the approval of Seneca stockholders at a special stockholder meeting, the approval of LBS stockholders, the closing of the financing, as well as other customary conditions.

## Insiders' Interests in the Proposed Transaction

21.     Seneca insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Seneca.

22.     Notably, certain Company insiders will secure positions for themselves with the combined company. For example, defendants Csimma, Gray, and Wei will serve on the board of directors of the combined company upon closing the merger.

23.     Further, if they are terminated in connection with the Proposed Transaction, Seneca insiders stand to receive substantial cash severance payments as set forth in the following table:

| Name (a) | Cash ($) (b) | Equity ($) (c) | Pension/NQDC ($) (d) | Perquisites/Benefits ($) (e) | Tax Reimbursement ($) (f) | Other ($) (g) | Total ($) (h) |
|---|---|---|---|---|---|---|---|
| Kenneth Carter, PhD | 1,050,000 | 188,789 (1) | | | 44,245 | | 1,283,034 |
| Mathew Kalnik, PhD | 705,500 | 476,663 (1) | | | 44,594 | | 1,226,757 |
| Dane Saglio | 525,000 | 362,392 (1) | | | 28,430 | | 915,822 |

## The Prospectus Contains Material Misstatements and Omissions

24.     The defendants filed a materially incomplete and misleading Prospectus with the SEC and disseminated it to Seneca's stockholders. The Prospectus misrepresents or omits material

information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

25.     Specifically, as set forth below, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things: (i) the background of the Proposed Transaction; (ii) the Company's and LBS' financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Transaction Committee's financial advisor, Cassel Salpeter; and (iii) the potential conflicts of interest of the Company's financial advisors, Hibiscus and Solebury.  Accordingly, Seneca stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning the Background of the Proposed Transaction***

26.     The Prospectus fails to disclose material information concerning the background of the Proposed Transaction.

27.     For example, the Prospectus fails to disclose whether the Company entered into confidentiality agreements with any parties during the sale process that include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these parties from submitting a proposal to the Company.

28.     The failure to disclose the existence of DADW provisions creates the false impression that any of the potential buyers who entered into confidentiality agreements could make a superior proposal to the Company.  If those confidentiality agreements contain DADW provisions, then those potential buyers can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, they would have to ask

for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Prospectus.

29.     Any reasonable Seneca stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

30.     Additionally, the Prospectus fails to disclose the terms and values for each of the proposals and indications of interest submitted by parties during the sales process leading up to the Proposed Transaction.

31.     The omission of this information renders the statements in the "Background of the Merger" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Company's and LBS' financial projections and Cassel Salpeter's Financial Analyses***

32.     First, the Prospectus completely omits Seneca's and LBS' financial projections as well as any projections for the combined company.

33.     Additionally, the Prospectus describes Cassel Salpeter's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Cassel Salpeter's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Seneca's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Cassel Salpeter's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

34.     With respect to Cassel Salpeter's *Selected Companies Analysis*, the Prospectus fails to disclose the multiples and financial metrics for each of the comparable companies analyzed and the revenue projections utilized in the analysis.

35.     With respect to Cassel Salpeter's *Selected Initial Public Offerings Analysis,* the Prospectus fails to disclose: (i) the individual multiples and metrics for each of the IPOs observed in the analysis; and (ii) Cassel Salpeter's basis for applying a multiple range of 0.7x to 1.0x. to LBS' invested capital.

36.     Without such undisclosed information, Seneca stockholders cannot evaluate for themselves whether the financial analyses performed by Cassel Salpeter were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Cassel Salpeter's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

37.     The omission of this material information renders the statements in the "Opinion of the Financial Advisor to the Seneca Transaction Committee" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Company's Financial Advisors' Potential Conflicts of Interest***

38.     The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisors, Hibiscus and Solebury.

39.     Specifically, the Prospectus fails to disclose the terms of Hibiscus' and Solebury's engagements, including: (i) the amount of compensation Hibiscus and Solebury have received or will receive in connection with their engagements; (ii) the amount Hibiscus and Solebury's

compensation that is contingent upon the consummation of the Proposed Transaction; (iii) any past services Hibiscus and Solebury have performed for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Hibiscus and Solebury for providing such services.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     The omission of this material information renders the statements in the "Background of the Merger" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

42.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Seneca will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus.  The Prospectus was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the background of the Proposed Transaction, the Company's and LBS' financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Transaction Committee's financial advisor, Cassel Salpeter, and the potential conflicts of interest of the Company's financial advisors.  The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

46.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

47.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48.     Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49.     Plaintiff repeats all previous allegations as if set forth in full.

50.     The Individual Defendants acted as controlling persons of Seneca within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Seneca, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Prospectus.

53.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Seneca stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Seneca, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Seneca stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 2, 2021

**LONG LAW, LLC**

By     *_/s/ Brian D. Long_*

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

**OF COUNSEL**
**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com